## KELLS *v.* BOYD.

*(Circuit Court, E. D. Louisiana.* January 27, 1887.)

SEAMEN—WAGES OF MASTER.

Upon a libel by the master of a vessel to enforce a claim for wages, *held* that, upon the evidence, the most favorable view to be taken of libelant's demand was that he was employed at New Orleans, wages to be afterwards determined; that the wages were afterwards agreed upon in New York at $125 per month, and were afterwards raised in New Orleans to $150 per month; that libelant was entitled to be paid upon this basis, and was not entitled to be repaid the expenses of a trip made by him from New York to New Orleans, which was made in his own interest, and not in the interest of the vessel.

Admiralty Appeal.
*Richard De Gray,* for libelant.
*B. F. Jones* and *J. O. Nixon, Jr.,* for claimant.

PARDEE, J. There is no evidence in the record that any contract of employment was made between libelant and respondent before libelant's arrival in New York, and about November 15, 1883, and that contract, according to the weight of the evidence, was for the employment of the libelant as master of the Gulnare, (then lying at the port of Philadelphia,) at the rate of $125 per month. What took place before the contract was entered into in New York was preparatory merely with a view to the future employment of the libelant. What was done by Loan in going after the libelant, and bringing him to New Orleans, appears by the evidence of himself and others to have been done as the friend of the libelant, for which respondent, although his agents knew of the trip and its object, was not responsible. It was in the supposed interest of libelant, and not of the respondent. The amounts furnished libelant in New Orleans by the agents of the respondents were advances to enable the libelant to go on to obtain his employment as master, and join the ship, with the understanding that libelant would be employed, although the terms of employment were not then settled. After the ship reached New Orleans, by agreement with respondent's agent, the amount of libelant's wages was fixed thereafter at $150 per month. The most favorable view, then, to be taken of libelant's demand, is that he was employed at New Orleans, wages to be afterwards determined, and which were afterwards agreed upon at New York, at $125 per month, and in New Orleans raised to $150 per month.

The exact date of the advances made in New Orleans does not appear from the evidence. Kells arrived in New Orleans about the first of November, 1883, and left for New York on thirteenth November. Computing his wages from the earliest date, and at the agreed rate of $125 per month, say from November 1, 1883, to December 4, 1883, when the ship arrived in New Orleans, when the wages were raised, 1 month and 14 days, at $125 per month, would make $183.33; and from December 14, 1883, to March 4, 1884, when libelant was discharged, 2

months and 20 days, at $150 per month, would make $400 more, or a total for wages of $583.33. Add to this nine days' board in New York, at $5 per day, $45, and $10.50 fare from New York to Philadelphia, and we have a total of $638.83, as the largest amount to which libelant could have been entitled in the way of credit at the time of his discharge. This calculation omits charge for board in New Orleans, as the date of employment is uncertain, and no amount proved to have been paid.

In the supplemental libel libelant admits having received from respondent the following sums, to-wit:

| | |
|---|---:|
| In New Orleans, | $300 |
| In New York, | 50 |
| At various times after December 14th, | 275 |
| Making, | $625 |

—To which should be added, as proved to have been paid by Moroney, agent, and not credited in either libel, $22.50, making a total of payment to libelant of $647.50. In other words, the most liberal calculation to be made in favor of libelant, and from the earliest date at all compatible with the evidence, shows that libelant has been overpaid, and has no just demand against the respondent for any of the matters propounded in either his original or supplemental libel.

This finding renders it unnecessary to go into the question of maladministration, and the failure of the libelant to account for moneys disbursed and expended for account of the Gulnare and her owners, during the time he (libelant) was master, as the respondent is not before the court seeking relief therefor.

A decree will be entered dismissing both the libel and supplemental libel, with costs.